**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**


**UNITED STATES OF AMERICA,**

**Case No. 5:06cr52-RS**
**vs.**                                                    **Case No. 5:08cv195-RS/WCS**

**JAYCEE WILLIAMS, JR.,**

    **Defendant.**

_____/


## REPORT AND RECOMMENDATION TO DENY § 2255 MOTION

Defendant Williams, through counsel, filed a motion to vacate, set aside or

correct sentence pursuant to 28 U.S.C. § 2255 with supporting memorandum.  Docs. 69

and 70.  Magistrate Judge Kornblum recused himself, doc. 71, and the case was

reassigned to me.

The Government filed a response in opposition to the § 2255 motion.  Doc. 74.

Defendant filed a reply.  Doc. 81.  Defendant then filed a motion for leave to amend,

accompanied by the proposed amended § 2255 motion.  Docs. 82 and 83.  The

Government objects to the motion to amend, claiming it is untimely.  Doc. 84.

Defendant filed a motion for leave to file a reply in response to the motion to amend,

and a proposed reply.  Docs. 85 and 86.  The Government objects, and a written

objection was filed.  Doc. 85, p. 1; doc. 87.

As relevant here, there is a one year time limit for filing a § 2255 motion, which

generally runs from "the date on which the judgment of conviction becomes final."  §

2255(f).[1]  Where an appeal is taken, the conviction becomes final when the 90 days for

filing a petition for writ of certiorari expires, or (if a petition is filed) when certiorari is

denied.  Clay v. United States, 537 U.S. 522, 123 S.Ct. 1072, 1075, 155 L.Ed.2d 88

(2003).

Defendant's motion to voluntarily dismiss his appeal with prejudice was granted

on June 21, 2007.  Doc. 67.  The Government asserts that the one year expired, at the

latest, on August 26, 2008, which was one year plus the 90 days for seeking certiorari.

Doc. 84, pp. 1-2.  As the Eleventh Circuit's order of dismissal was dated June 21, 2007,

it would seem that allowing 90 days plus one year would give Defendant until

September 19, 2008, and the court uses that date in the discussion ahead.[2]  It does not

change the analysis.

There is no argument that the initial § 2255 motion, filed on June 18, 2008, was

untimely.  New arguments raised in the reply, amended § 2255 motion, or the most

---

[1] The period runs from the latest of this or other events.  *See* § 2255(f)(2)-(4).  There is no argument, or indication on review of the file, that a later date might apply.

[2] In the usual case the opinion is dated earlier than the mandate, but here (probably because it was on Defendant's own motion) the order of dismissal was filed and issued as mandate the same day.  Doc. 67.  It is not clear from what earlier date the Government calculated the 90 days.

recent reply, are untimely unless the new claims relate back to the claims in the initial motion, since those documents were all filed well after September 19, 2008.

The Government sets forth the procedural facts in response to the initial § 2255 motion. Doc. 74, pp. 1-5. As Defendant has counsel and the parties essentially agree on the background of the case, the history is not repeated except as necessary to the analysis.

By way of brief background, Defendant entered into a plea and cooperation agreement, which provided in relevant part that "[i]f, in the sole discretion of the United States Attorney, JAYCEE WILLIAMS, JR. Is deemed to have provided substantial assistance in the investigation or prosecution of other persons who have committed offenses . . . then the United States Attorney will file a substantial assistance motion." Doc. 31, p. 5. He pleaded guilty to possess with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § § 841(a)(1) and 841(b)(1)(A)(iii). *Id.*, p. 2; doc. 54 (transcript of rearraignment). The offense was committed on or about May 9, 2006. Doc. 18 (indictment). Defendant told the court at the time of his guilty plea that he understood that should his sentence as imposed be more severe than expected he would still be bound by the plea. Doc. 54, pp. 12-13. He told the court that he signed and agreed with the plea agreement, and there were no promises other than what was written in the agreement. *Id.*, pp. 13-14. He said he was pleading guilty because he committed the offense. *Id.*, p. 16.

Defendant was sentenced to the minimum mandatory sentence of 240 months, without the benefit of a substantial assistance motion. Doc. 42 (judgment); doc. 55

(transcript of sentencing).[3]   As noted above, Defendant voluntarily dismissed his

appeal.

**Initial § 2255 Motion and Arguments in Response and Reply**

In his § 2255 motion, Defendant raises one claim of ineffective assistance of

counsel.  He alleges that before entering his plea, counsel promised to take all steps

necessary to obtain a substantial assistance motion from the Government.  Doc. 70, p.

5.

"A convicted defendant making a claim of ineffective assistance of counsel must

identify the acts or omissions of counsel that are alleged not to have been the result of

reasonable professional judgment," and must also "affirmatively prove prejudice," *i.e.*, a

"a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 690,

693-694, 104 S.Ct. 2052, 2066-68, 80 L.Ed.2d 674 (1984).

Defendant and the Government agree that Defendant himself took steps to

cooperate prior to sentencing, and that sentencing was twice continued so he could

continue his cooperation.  Doc. 70, p. 5; doc. 74, pp. 3-5, 14; doc. 81, pp. 2-3.  At

sentencing, it was explained to the court that Defendant was a potential Government

witness in the prosecution of Terry McCloud.  Doc. 55, p. 5.  The prosecutor explained

that "[h]ad Mr. McCloud chosen to go to trial, it would have been my intent to consider

utilizing Mr. Williams as a witness in that case," but McCloud obtained new counsel and

---

[3] As addressed ahead, Defendant asserts in his amended § 2255 motion that this
was not the minimum mandatory sentence as the Government's notice of enhancement
was insufficient.

entered into a plea and cooperation agreement with the Government. *Id.*, pp. 5-6.

Defendant had provided information about other people as well, and although his

cooperation had not yet risen to the level of substantial assistance, there were no

complaints regarding his cooperation. *Id.*, pp. 6. Defense counsel said that Defendant

had been working with Agent Duncan, that his cooperation would continue and this

might generate future prosecutions. *Id.*, p. 4. Counsel also said: "And if that should

occur, they would be open to a Rule 35 motion. That's what we're hoping for there." *Id.*

In support of his § 2255 motion, Defendant notes the foregoing representations

at sentencing, and claims:

> Despite the representations of defense counsel at the sentencing hearing,
> defense counsel has not – since the sentencing hearing – taken any steps
> to follow up on a possible rule 35 motion. As a result, counsel broke his
> (pre-plea) promise to Defendant Williams to take all necessary steps in
> order to attempt to get a rule 35 motion in this case.

Doc. 70, p. 6 (footnote omitted). Defendant asserts that to convince him to enter a plea,

counsel promised to pursue a U.S.S.G. § 5K1 motion or Fed.R.Crim.P. 35 motion;

counsel did not keep the promise and so, Defendant claims, he is entitled to withdraw

his guilty plea. *Id.*, p. 7. But for counsel's errors, it is argued, Defendant would have

pleaded not guilty or would have received a 5K1 or Rule 35 motion. *Id.*

The Government responds that Defendant was aware that his cooperation did

not guarantee a sentence reduction, that counsel pursued a substantial assistance

motion, that "this is simply a case where" the cooperation was not deemed to warrant a

motion, and that Defendant is free to continue his cooperation. Doc. 74, pp. 14-15.

Government counsel said that the Government "is unaware of any action Mr. Graham

could have taken that would have convinced the government to file a substantial assistance motion."  *Id.*, p. 5.

Although Defendant alleges that his attorney did not "take any steps" to secure a substantial assistance motion, Defendant has not explained what "steps" could have been taken but were not.  Defendant has not alleged anything else counsel could or should have done, particularly after sentencing, to enable him to earn a substantial assistance motion.  He notes that counsel filed a motion to withdraw shortly after sentencing, but makes no specific arguments about it.  Doc. 70, p. 6, n. 1, referencing doc. 48.  Counsel indicated in the motion that he was retained specifically for trial and not appeal, that he did not do appellate work, and that his relationship with Defendant had "broken down and communication between the two is at an impasse."  Doc. 48, pp. 1-2.[4]  Defendant had already been debriefed before sentencing, and whether that information could or would be used after that depended on the Government.  Defendant does not make any claim that after sentencing, he had additional information but was not given the opportunity to provide it.  He does not show that he did provide additional information but additional cooperation went unnoticed due to counsel's withdrawal from the case.  Defendant has not shown that counsel did not have good cause to withdraw as his attorney.  Consequently, Defendant has not demonstrated error of counsel or prejudice to the outcome and is not entitled to relief based on the ineffective assistance of counsel claim as raised in the original § 2255 motion.

---

[4] Defense counsel Graham states by affidavit that he had to withdraw because Defendant was insisting he file a frivolous appeal, and "the defendant and individuals purporting to be family members made constant threats to the undersigned to do bodily harm."  Doc. 74-2, p. 4.

Defendant filed a reply on May 20, 2009.  Doc. 81.  In response to the

Government's argument that his cooperation did not reach the level of substantial

assistance, Defendant claimed (for the first time) that his cooperation did reach that

level.  Doc. 81, p. 2.  Current counsel for Defendant indicates he "recently talked to Mr.

McCloud's former counsel," Chris Patterson, who advised that the statement of facts in

McCloud's case referenced "two cooperating federal defendants."  *Id.*  "Defendant

Williams submits he was one of the 'cooperating federal defendants' referenced in the

Statement of Facts in Mr. McCloud's case."  *Id.*  McCloud is apparently prepared to sign

(but has not signed) an affidavit stating that having "two cooperating federal defendants

who would testify against him (referenced in his Statement of Facts) was the substantial

reason for his decision to enter a guilty plea in his case."  *Id.*, pp. 2-3.[5]

Defendant contends that, if his potential testimony was a "substantial reason"

prompting McCloud's plea, then Defendant actually *was* entitled to a substantial

assistance motion and defense counsel was ineffective for failing to so argue.  *Id.*, p. 3.

This is not the same as the initial claim, but it is presumably sufficiently related to

it as to be considered to have been timely raised.[6]  The modified claim still does not

entitle Defendant to relief.  First, the claim relies on the unsupported assumption that

Defendant Williams actually was one of the two cooperating defendants referenced in

---

[5] It was anticipated that McCloud's affidavit would be filed approximately thirty days after the reply, filed May 20, 2009.  Doc. 81, p. 3.  The affidavit was not filed.

[6] The law governing relation back of amendments to a timely filed pleading is discussed ahead. This claim, that counsel failed to argue at sentencing that his cooperation had actually reached the level of substantial assistance, is arguably tied to the same "core of operative facts" as a claim that counsel failed to take all steps necessary to obtain a substantial assistance motion.

the statement of facts as to Mr. McCloud. A sworn statement from McCloud (never produced) that there were two cooperating federal defendants who would testify against him, and that this fact influenced his decision to enter a plea, does not show that Defendant Williams was in fact one of those two witnesses.[7]

Moreover, even if he were one of the two witnesses that caused McCloud to plead guilty – indeed, even if Defendant had actually testified against McCloud – neither defense counsel nor the court could have forced the Government to file a substantial assistance motion. It was the Government's motion to make, expressly left to the sole discretion of the United States Attorney. The refusal to file a substantial assistance motion is not subject to review absent an allegation and a substantial showing that the refusal was based on a constitutionally impermissible motive, such as race or religion. United States v. Dorsey, 554 F.3d 958, 960-961 ((11th Cir. 2009), *following* United States v. Forney, 9 F.3d 1492 (11th Cir. 1993) (other citations omitted).

The record shows that by the time of sentencing the Government had already decided that Defendant's cooperation up to that point, which included his cooperation against McCloud, did not justify the filing of a substantial assistance motion. There is no indication of an unconstitutional motive, so even if counsel made the argument that this decision was wrong or unfair and the court agreed, the Government could stand by its decision and there would be no remedy. Prejudice to the outcome is not shown as to this modified claim.

---

[7] He could have been. Assistant United States Attorney Hensel stated at sentencing that he "anticipated utilizing him [Defendant] as a witness in a separate federal case that was recently resolved involving Terry Wayne McCloud." Doc. 55, p. 6.

Defendant also alleges in his reply that his defense counsel had a conflict of interest. Doc. 81, pp. 3-4. This is a new allegation. Specifically, he represents that in a conversation between current counsel and McCloud,

> Mr. McCloud revealed that when his case began, the charges were initially filed in state court and he retained Defendant Williams' defense counsel (Anthony Waylon Graham) to represent him in state court. The charges were subsequently transferred to federal court and, because Mr. Graham wanted additional money to represent Mr. McCloud in federal court, Mr. McCloud ultimately obtained different counsel to represent him in federal court. However, at the time that Mr. Graham represented Defendant Williams, he was either currently representing or had previously represented Mr. McCloud.[fn. 1] Mr. Graham's failure to pursue a § 5K1 motion or a rule 35 motion in Defendant Williams' case based on the substantial assistance that Defendant Williams provided in Mr. McCloud's case based on the substantial assistance that Defendant Williams provided in Mr. McCloud's case is perhaps explained by the potential conflict of interest that Mr. Graham would have faced if he took a position in Defendant Williams' case that had an adverse effect on his former client.
>
> > [fn. 1] Mr. McCloud informed undersigned counsel that he remembered a day at the jail when Mr. Graham came to visit both him and Defendant Williams (i.e., Mr. Graham represented Mr. McCloud and Defendant Williams at the same time).

Doc. 81, pp. 3-4.

Defendant did not claim a conflict of interest in his initial § 2255 motion. This conflict claim is based on a different set of facts, prior representation of McCloud. The basis for this new claim was likely uncovered after the original § 2255 motion was filed, interviewing McCloud in the process of replying to the Government's response, but the same information could have been acquired earlier through due diligence.[8]

---

[8] Section 2255(f)(4) provides that the period may run from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." This does not apply. Current counsel apparently gathered

A conflict of interest claim is reviewed differently than a standard ineffective assistance of counsel claim. As established in Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), "a defendant who shows that a conflict of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief." Mickens v. Taylor, 535 U.S. 162, at 168, 170, 122 S.Ct. 1237, at 1242, 1243, 152 L.Ed.2d 291 (2002), *quoting* Cuyler with added emphasis.

As summarized by the Eleventh Circuit:

> An attorney's performance must be adversely affected by the conflict of interest before there is a constitutional violation. If a trial court improperly requires joint representation of co-defendants over timely objection, reversal is automatic. *In all other conflict situations*, there is no Sixth Amendment violation, and thus no reversal, absent a showing that an actual conflict of interest adversely affected counsel's performance.

Hunter v. Secretary, Dept. Of Corrections, 395 F.3d 1196, 1200 (11th Cir. 2005) (emphasis added) (collecting cases, including Strickland). To demonstrate an actual conflict that hindered a lawyer's performance, Defendant must make a factual showing of inconsistent interests or point to specific instances in the record to suggest an actual impairment of Defendant's interests. Quince v. Crosby, 360 F.3d 1259, 1264 (11th Cir.), *cert. denied*, 125 S.Ct. 436 (2004) (citations omitted). To demonstrate an adverse effect he must show that counsel failed to pursue a reasonable alternative strategy because it conflicted with counsel's other alleged loyalties. *Id.*, at 1264-65 (citations omitted).

---

this new evidence through a conversation with McCloud. There is no indication that McCloud would not have said this earlier had he been asked.

A claim of conflict of interest due to counsel's alleged representation of McCloud does not relate back to the claim that counsel should have done more, primarily after sentencing, to obtain a substantial assistance motion. *See* Mayle v. Felix, 545 U.S. 644, 650, 664, 125 S.Ct. 2562, 2566, 2574, 162 L.Ed.2d 582 (2005) (amended petition did not relate back to petition filed within one year period where it asserted a ground for relief supported by facts differing from those the original pleading). As a new claim, it is untimely.

Further, Defendant has not shown any actual conflict or possible adverse effect resulting from the purported conflict. Defendant has not submitted a statement of McCloud showing he was ever represented by the same attorney as this Defendant. There is certainly no showing of the extent or duration of the alleged representation of McCloud in state court, except to say that it ended around the time that McCloud's prosecution was transferred to federal court, at which time Graham demanded greater compensation.[9]

The indictment against McCloud, returned by the grand jury on August 15, 2006, charged an offense committed on June 21, 2006. Doc. 1 in case number 5:06cr76-RS. According to the statement of facts, law enforcement had received information regarding McCloud's criminal activity beginning in March of 2006. Doc. 32 in that case.

---

[9] It is noted that both McCloud and Williams qualified for appointment of the Federal Public Defender, although Petitioner apparently retained Graham. *See* doc. 48. Graham filed a notice of appearance in this case on June 4, 2006. Doc. 17. The guilty plea was entered on June 29, 2006, and sentencing was held on December 13, 2006. Graham's motion to withdraw, filed on January 4, 2007, was granted by order entered on the docket on January 16, 2007. Docs. 48 and 52.

A warrant was obtained for his failure to register as a felon, and, after some surveillance, a search warrant was obtained for a storage unit. *Id.* Cocaine powder was discovered inside an Isuzu SUV. *Id.* A number of officers would have testified to their surveillance of McCloud and to the search. *Id.* The two cooperating federal defendants "would testify to prior cocaine dealings with the defendant or incriminating statements made by the defendant regarding his ownership of the cocaine seized from the Isuzu." *Id.*

McCloud was represented by Rhonda Clyatt, who was appointed to represent him through the Federal Public Defender. Docs. 7, 10, and 14 in that file. Clyatt was ultimately permitted to withdraw due to a conflict of interest. Docs. 24-29. The first attempt to withdraw was filed on October 31, 2006, indicating counsel "was recently advised by the Government that a former client has become a witness against the Defendant." Doc. 24. More specifically, it was alleged in the motion that was ultimately granted that counsel "was recently advised by the Government that a former client will be called to testify against the Defendant regarding prior drug activity conducted between the parties as well as conversations between the parties regarding the current charges against the Defendant." Doc. 28, pp. 1-2 (motion filed November 8, 2006). The motion was granted and the public defender was directed to designate new counsel by order on November 9, 2006. Doc. 29. Chris Patterson was added as McCloud's appointed counsel, and on November 20, 2006, a change of plea hearing was scheduled for November 30, 2006. The order of appointment is doc. 36 in that file.

This was all around the time that Defendant Williams sought to reschedule sentencing in this case based on his anticipated testimony in the trial against McCloud,

originally scheduled for October 16, rescheduled for November 6, and expected to be continued even further.  Doc. 38 (sealed motion filed October 19, 2006).

Near the time that Defendant Williams was about to testify, Clyatt found out that she had represented one of the two federal defendant witnesses testifying against McCloud.  It is possible (though neither alleged nor established) that Defendant was one of those two witnesses, and he was Clyatt's former client (rather than McCloud being counsel Graham's former client).  It is also possible that McCloud, knowing his own counsel had to withdraw from his case because she previously represented one of the witnesses against him, was inspired to tell Defendant's § 2255 counsel that Graham had previously represented *him*, so should have withdrawn due to a conflict.

In any event, and as an alternative to finding this claim to be untimely, it is recommended that the court find that no actual conflict is demonstrated.  There has been no factual showing of inconsistent interests of Graham, or references to specific instances in the record suggesting a conflict.  No adverse effect is demonstrated, as Defendant has not shown there was a reasonable alternative strategy counsel failed to pursue due to his alleged loyalty to McCloud.  No alternative strategy Graham could have pursued is even *suggested*.  Encouraging Defendant to cooperate, and seeking continuances of sentencing – one specifically for the purpose of allowing Defendant to testify against McCloud – contradicts a claim of conflict or adverse effect.  This claim is both untimely and unsupported on the merits.

## Amended § 2255 Motion

In his proposed amendment, Defendant argues for the first time that counsel was ineffective for failing to argue that the court lacked jurisdiction to enhance his sentence,

and, alternatively, the underlying claim, that the court lacked jurisdiction to enhance his sentence.  Docs. 83, pp. 1-2 and n. 1; doc. 86, pp. 1-2.  In support, he asserts that the Government's notice of enhancement did not comply with 21 U.S.C. § 851(a)(1) because it referenced 21 U.S.C. § 841(b)(1)(B) (providing a ten year minimum mandatory with a prior felony drug offense where the weight of crack cocaine for the offense of conviction was more than 5 grams) rather than § 841(b)(1)(A) (providing a twenty year minimum mandatory with a prior felony drug offense where the weight of crack cocaine was more than 50 grams, as in the case at bar).  Doc. 83, p. 2.  *See* doc. 29 (the notice of enhancement, a copy is also supplied as an attachment to doc. 83). Defendant argues that the notice was also deficient under § 851(a)(1) because rather than providing the date of the prior conviction, which was February 5, 1998, it gave the date of November 16, 1998, which was actually the date on which Defendant was found in violation of probation in the same case.  Doc. 83, pp. 2-3.  *See also* attachment to doc. 83 (doc. 83-3), copy of the docket report in the state case.

The Government argues that this is a new claim which does not relate back to the original § 2255 motion and is untimely under the one year period for filing a § 2255 motion.  Doc. 84.  Under Mayle v. Felix, 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005), an amended § 2254 petition does not relate back to a timely filed petition, and thereby escape the one year limitations period, "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  545 U.S. at 650, 125 S.Ct. at 2566.  "So long as the original and amended petitions are tied to a common core of operative facts, relation back will be in order." 545 U.S. at 664, 125 S.Ct. at 2574 (footnote omitted).  In the footnote, the Court noted

that relation back is usually allowed when the new claim is based on the same *facts* as the timely claim and changes the legal theory. *Id.*, at 664, n. 7, 125 S.Ct. at 2574-75, n. 7 (collecting circuit court cases where relation back was deemed appropriate).

Defendant's request to reply (doc. 85) to the response to his motion to amend is granted by separate order. In the reply, Defendant reiterates that this is a jurisdictional claim that may be raised at any time, that such challenges are not waivable, and Defendant asserts that the relation back doctrine should be liberally applied. Doc. 86, pp. 1-2 and n. 2.

Claiming that this is a "jurisdictional" claim and therefore not subject to the time constraints for filing a § 2255 motion is not persuasive. Section 2255 provides a remedy for "[a] prisoner in custody . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, *or that the court was without jurisdiction to impose such sentence*, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." § 2255(a) (emphasis added). Jurisdiction is specifically listed as a ground for § 2255 relief, and is not excluded from either the one year limitations period of § 2255(f) or the restrictions on second or successive motions set forth in § 2255(h). *See* Barreto-Barreto v. United States, 551 F.3d 95, 100 (1st Cir. 2008) ("[n]othing in the language of § 2255 suggests that jurisdictional challenges are exempt from the one-year limitations period. To the contrary, § 2255(f) explicitly states that the limitations period 'shall apply' to all motions made under § 2255.").

Also unavailing is Defendant's reliance on Fed.R.Crim.P. 12(b)(3)(B). The rule provides that "a motion alleging a defect in the indictment or information" must be raised

before trial, "but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Fed.R.Crim.P. 12(b)(3)(B) (emphasis added). This case is no longer "pending" because a final judgment was entered and the appeal was dismissed. *See* Barreto-Barreto, 551 F.3d at 100) (when final judgment is entered and no appeal is pending, Rule 12(b)(3)(B) cannot be used to challenge jurisdiction) (citation omitted); United States v. Patton, 309 F.3d 1093, 1094 (8th Cir. 2002) (the proceeding leading to conviction was no longer pending, and Rule 12 challenge to jurisdiction, apparently so labeled to avoid the restrictions on successive § 2255 motions, was properly denied).[10]

Consequently, the new claim was filed after expiration of the one year period. The new claim does not relate back to the original § 2255 motion because the original and amended motions are not "tied to a common core of operative facts." "This new claim arguing a lack of jurisdiction to impose an enhanced sentence is untimely. The court cannot reach the merits of this new claim.

If this timeliness analysis is rejected, however, I note the following. Defendant's new ground states a colorable claim under current binding precedent. The Eleventh Circuit has held that failure to comply with the requirements of § 851(a) deprives the court of jurisdiction to impose an enhanced sentence, and that this is a jurisdictional defect which cannot be waived or procedurally defaulted. Harris v. United States, 149 F.3d 1304, 1306-1309 (11th Cir. 1998). This circuit continues to hold that compliance

---

[10] That opinion referenced "Rule 12(b)(2) [which] permits the district court to notice a jurisdictional challenge 'at any time during the pendency of the proceedings.'" The rule was amended in 2002, and this change was intended to be stylistic only. *See* Advisory Committee Notes to 2002 Amendment.

with § 851(a) is jurisdictional. <u>United States v. Thompson</u>, 473 F.3d 1137, 1144 (11th Cir. 2006); <u>United States v. Ramirez</u>, 501 F.3d 1237, 1239-1240 (11th Cir. 2007) (citing <u>Thompson</u> and <u>Harris</u>) (finding notice was sufficient in that case to confer jurisdiction); <u>United States v. Jackson</u>, 544 F.2d 1176, 1184-85 (11th Cir. 2008) (citing <u>Ramirez</u>, <u>Thompson</u>, and <u>Harris</u>) (finding notice satisfied § 851(a)(1) though it was not personally signed by the United States Attorney but by an Assistant United States Attorney).

Defendant references the Eleventh Circuit's unpublished opinion in another case from this District. <u>United States v. Bowden</u>, 2009 WL 32755 (11th Cir. 2009); doc. 90 in case number 5:06cr46-RS.[11] The notice of enhancement for Defendant Bowden, a copy of which is supplied by Defendant Williams here, erroneously indicated that Bowden was subject to an increased penalty under § 841(b)(1)(B) based on two separate possession of cocaine convictions. Doc. 84, Ex. C (doc. 83-4 in ECF); doc. 21 in case number 5:06cr46-RS.[12] The issue was raised there on direct appeal.[13] The Eleventh Circuit noted that the adequacy of notice is reviewed de novo, and held that strict compliance with § 851(a)(1) is required. Doc. 90-2, pp. 2-3 (citing <u>Ramirez</u>, other citations omitted). "When a notice of enhancement contains minor errors we will find §

---

[11] The mandate, issued April 8, 2009, is doc. 90; the attached opinion of January 7, 2009, is doc. 90-2. Defendant Bowden was recently resentenced to 294 months. Doc. 114 in that file.

[12] The notices of enhancement as to this Defendant and Bowden were filed by Assistant United States Attorney Hensel on June 28, 2006, and July 5, 2006, respectively.

[13] Defendant Bowden was granted § 2255 relief and the original judgment re-entered so he could take a timely direct appeal. Docs. 68, 73, and 74 in that file. The other § 2255 claims were not addressed on the merits and dismissed without prejudice. Docs. 68 and 73.

851 compliance as long as the notice, despite the errors, unambiguously signal[s] the government's intent." *Id.*, p. 3, *citing* Perez v. United States, 249 F.3d 1261, 1266-67 (11th Cir. 2001).[14]

The court in Bowden found that "The record demonstrates that the government's information did not unambiguously signal to Bowden that it sought mandatory life imprisonment when the information cited a statute that imposed only a ten-year mandatory minimum term of imprisonment." Doc. 90-2 in that file, p. 3.

> In addition, the government failed to clearly indicate "the previous convictions to be relied upon" when it listed as Bowden's first Possession of a Controlled Substance conviction date not the actual date of conviction, but rather a date on which another adverse action was taken against Bowden in the same-numbered case. *See* 21 U.S.C. § 851(a)(1).

*Id.*, pp. 3-4. The court vacated the sentence and remanded for resentencing without the enhancement. *Id.*, p. 4. It is largely based on Bowden that Defendant claims the citation to § 841(b)(1)(B), and provision of the date his probation was revoked in state court (rather than of the original judgment) for the prior drug felony, require that he be resentenced without the enhancement. Doc. 83, p. 5.

---

[14] In Perez, the court noted the requirement of "strict compliance with the filing and service specifications of § 851(a)(1)." 249 F.3d at 1264. It discussed opinions of other circuits, which "have distinguished between the strict filing and service requirements in § 851(a)(1) and the precise details required to be present in an information." *Id.*, at 1265-1266. Where the original information was timely filed, and contained notice of the previous conviction (except the year, which was provided as 1992 rather than 1991), it unambiguously signaled the Government's intent and Defendant did not allege any confusion as to which prior conviction the Government relied upon. *Id.*, at 1266-1267. Alternatively, the court found that the mistake as to the year of conviction was only a clerical mistake, and the Government had filed an amended information to correct the mistake before pronouncement of sentence as required by § 851(a)(1). *Id.*, at 1267.

Bowden is an unpublished opinion.  "Unpublished opinions are not considered

binding precedent, but they may be cited as persuasive authority."  11th Cir. Rule

36-2.[15]  Bowden may also be distinguishable from this case as it was before the

Eleventh Circuit on direct appeal rather than appeal from § 2255 motion.  The Harris

case, however, which was not cited in the Bowden opinion, was an appeal from denial

of a § 2255 motion so the issue of direct appeal versus appeal from denial of a § 2255

motion may not be a significant.

Accordingly, if this claim were timely, it could be meritorious based upon current

Eleventh Circuit precedent.  But the Eleventh Circuit stands alone.  A number of circuits

have determined that 21 U.S.C. § 851(a) is not jurisdictional, and an enhanced

sentence may be imposed if the defendant received actual notice even though § 851(a)

was not precisely followed.  *See* United States v. Pritchett, 496 F.3d 537, 542-546 (6th

Cir. 2007) (collecting cases and "join[ing] the majority of its sister circuits in holding that

the section 851(a) requirements are not jurisdictional.").  In Pritchett the Sixth Circuit

expressly rejected Harris, noting the Eleventh Circuit is the "sole circuit holding that the

section 851(a) requirements are jurisdictional," and Harris had been undermined by

subsequent Supreme Court opinions in Eberhart v. United States, 546 U.S. 12, 126

S.Ct. 403, 163 L.Ed.2d 14 (2005) and Kontrick v. Ryan, 540 U.S. 443, 124 S.Ct. 906,

---

[15] The Eleventh Circuit "generally does not cite to its 'unpublished opinions' because
they are not binding precedent," though they may be cited as relevant "whether the
predicates for res judicata, collateral estoppel, or double jeopardy exist in the case, to
ascertain the law of the case, or to establish the procedural history or facts of the case."
IOP (Internal Operating Procedures) 7 to 11th Cir Rule 36.  *See also* Resolution Trust
Corp. v. Fragetti, 49 F.3d 715, 718 (11th Cir. 1995) (citing 11th Cir. Rule 36-2 and
considering unpublished opinion, "but are not persuaded by it.").

157 L.Ed.2d 867 (2004). 496 F.3d at 542-547. "[Section] 851(a) has nothing to do with subject-matter jurisdiction, as the Supreme Court has defined that term in *Cotton*," expressly overruling prior circuit cases holding otherwise. United States v. Ceballos, 302 F.3d 679, 692 (7th Cir. 2002), *citing* United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). In Cotton, the Court held that the failure to allege in the indictment a fact that increased the statutory maximum penalty was not a jurisdictional defect, and as the claim was not raised before it was subject to plain error review on appeal. 535 U.S. at 629-632, 1784-85.[16]

In summary, the new claims are untimely and do not relate back to the original motion. The last new claim, concerning the court's "jurisdiction" to impose an enhanced sentence, raises a colorable claim (the only one among the new claims), but that claim is also untimely because it does not relate back to the claim raised in the original motion.

It is therefore respectfully **RECOMMENDED** that Defendant's motion to amend, doc. 82, be **DENIED** as untimely, and the original § 2255 motion (doc. 69) be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on September 11, 2009.

**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[16] The defendants before the Court in Cotton, who had already been convicted when the Court decided Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), claimed their indictments were defective under Apprendi for failing to charge drug quantity, a fact which increased the statutory maximum.

## <u>NOTICE TO THE PARTIES</u>

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.